OPINION
{¶ 1} Appellant, James Mosley, appeals from his conviction and sentence for multiple counts of rape, gross sexual imposition, sexual battery, and kidnapping. For the following reasons, we affirm.
 {¶ 2} Appellant was indicted on ten counts of rape, R.C.2907.02, felonies of the first degree, five counts of gross sexual imposition, R.C. 2907.05, felonies of the fourth degree, five counts of sexual battery, R.C. 2907.03, felonies of the third degree, and one count of kidnapping, R.C. 2905.01, a felony of the first degree. Each count of the indictment alleged that the conduct took place between June 1, 2001 and December 9, 2004. The victim in all counts was appellant's daughter, who was born on April 21, 1987, and was 17 years of age at the time of trial.
 {¶ 3} Appellant waived trial by jury and consented to be tried by the court. Following a bench trial, appellant was found guilty of all counts. The trial court merged counts 16 through 20 (sexual battery), with counts six through ten (rape), and merged count 21 (kidnapping) with count one (rape). By law, a prison sentence was mandatory for the rape counts. The court imposed a sentence of five years on each of the ten counts of rape, and a sentence of 12 months on each count of gross sexual imposition. Counts one through four (rape) were ordered to be served consecutively to each other. All other counts were ordered to be served concurrently with counts one through four, for a total of 20 years in prison. The final judgment and sentencing entry was filed on June 10, 2005. This appeal followed.
 {¶ 4} Appellant raises six assignments of error:
I. THE TRIAL COURT ERRED AND DEPRIVED APPELLANT OF DUE PROCESS OF LAW AS GUARANTEED BY THE FOURTEENTH AMENDMENT TO THE UNITED STATES CONSTITUTION AND ARTICLE ONE SECTION TEN OF THE OHIO CONSTITUTION BY FINDING APPELLANT GUILTY OF RAPE, KIDNAPPING, SEXUAL BATTERY AND GROSS SEXUAL IMPOSITION AS THOSE VERDICTS WERE NOT SUPPORTED BY SUFFICIENT EVIDENCE AND WERE ALSO AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.
II. THE TRIAL COURT ERRED AND DEPRIVED APPELLANT OF A FAIR TRIAL AND DUE PROCESS OF LAW AS GUARANTEED BY THEFOURTEENTH AMENDMENT TO THE UNITED STATES CONSTITUTION AND ARTICLE ONE SECTION TEN OF THE OHIO CONSTITUTION BY PERMITTING THE STATE TO INTRODUCE INADMISSIBLE CHARACTER EVIDENCE.
III. APPELLANT'S TRIAL COUNSEL WAS INEFFECTIVE, THEREBY DENYING HIM HIS RIGHT TO EFFECTIVE ASSISTANCE OF COUNSEL AS GUARANTEED BY THE UNITED STATES AND OHIO CONSTITUTIONS.
IV. THE TRIAL COURT VIOLATED APPELLANT'S RIGHT TO A FAIR SENTENCING HEARING BY DENYING HIM THE RIGHT OF ALLOCUTION.
V. THE TRIAL COURT ERRED TO THE PREJUDICE OF APPELLANT BY IMPROPERLY SENTENCING HIM TO CONSECUTIVE TERMS OF ACTUAL INCARCERATION IN CONTRAVENTION OF OHIO'S SENTENCING STATUTES.
VI. THE TRIAL COURT ERRED TO THE PREJUDICE OF APPELLANT BY IMPROPERLY SENTENCING HIM TO TERMS OF ACTUAL INCARCERATION WHICH WERE LONGER THAN THE MINIMUM TERMS IN CONTRAVENTION OF OHIO'S SENTENCING STATUTES.
In addition, the prosecution raises a single assignment of error on cross-appeal:
THE COURT IMPROPERLY FOUND THAT THE CONSENT TO SEARCH WAS INVOLUNTARY, AND IMPROPERLY SUPPRESSED THE FRUITS OF THE SEARCH.
We will begin by addressing appellant's assignments of error.
 {¶ 5} Appellant's first assignment of error challenges the trial court's verdict as being against both the sufficiency and the manifest weight of the evidence presented at trial. In Statev. Thompkins (1997), 78 Ohio St.3d 380, the Supreme Court of Ohio addressed both concepts, noting that each is quantitatively and qualitatively different though often confused. An examination of the sufficiency of evidence is a question of adequacy — is the evidence legally sufficient to support the verdict as a matter of law? Id. at 386. Thus, on review, we must examine the evidence to determine whether that evidence, if believed, would convince the average person of the defendant's guilt beyond a reasonable doubt. State v. Jenks (1991), 61 Ohio St.3d 259, paragraph two of the syllabus. "The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." Id.
 {¶ 6} On the other hand, an analysis of the weight of the evidence can only occur after determining that the prosecution presented sufficient evidence to support the conviction.Thompkins, at 388 citing Tibbs v. Florida (1982),457 U.S. 31, 41-43, 102 S.Ct. 2211, 2218-2219. Examining the weight of the evidence is not a question of amount — is it enough — but of the cumulative effect of inducing belief. Id. at 387. The weight concerns whether the greater amount of credible evidence supports one outcome over another. Thus, when reviewing a defendant's claim that the verdict is against the manifest weight of the evidence, an appellate court sits as a "thirteenth juror" and, "reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed." Id., quotingState v. Martin (1983), 20 Ohio App.3d 172, 175.
 {¶ 7} We must determine whether the state produced evidence supporting each count of the indictment — ten counts of rape, five counts of gross sexual imposition, five counts of sexual battery, and one count of kidnapping — for which appellant was found guilty. If we find sufficient evidence, our next inquiry is whether the trial court rendered a verdict in accord with the greater weight of the credible evidence. We first turn to the definitions of the relevant crimes.
 {¶ 8} R.C. 2907.02(A)(2) states "[n]o person shall engage in sexual conduct with another when the offender purposely compels the other person to submit by force or threat of force." In turn, the phrase "sexual conduct" is defined as "vaginal intercourse between a male and female; anal intercourse, fellatio, and cunnilingus between persons regardless of sex; and, [without privilege to do so], the insertion, however slight, of any part of the body or any instrument, apparatus, or other object into the vaginal or anal cavity of another." R.C. 2907.01(A). An offender who violates R.C. 2907.02 has committed the crime of rape.
 {¶ 9} Conceptually, gross sexual imposition is similar to rape but proscribes contact where rape prohibits actual conduct. The crime is defined in R.C. 2907.05, which states, in pertinent part:
No person shall have sexual contact with another, not the spouse of the offender; cause another, not the spouse of the offender, to have sexual contact with the offender; or cause two or more other persons to have sexual contact when any of the following applies:
(1) The offender purposely compels the other person * * * to submit by force or threat of force.
Sexual contact, as differentiated from sexual conduct, is defined as "any touching of an erogenous zone of another, including without limitation the thigh, genitals, buttock, pubic region, or, if the person is a female, a breast, for the purpose of sexually arousing or gratifying either person." R.C.2907.01(B).
 {¶ 10} Sexual battery and kidnapping are also implicated in this case. Sexual battery is a crime similar to rape in that it also prohibits sexual conduct. Sexual battery, however, does not require compulsion by force or threat of force. As stated in R.C.2907.03, sexual battery is implicated when a person engages in sexual conduct with another person when any of 11 factors apply. As is relevant to this case, an offender has committed sexual battery if he engages in sexual conduct with his natural child. R.C. 2907.03(A)(5). Lastly, appellant was found guilty on one count of kidnapping. R.C. 2905.01 states, as is relevant:
No person, by force, threat, or deception * * * shall remove another from the place where the other person is found or restrain the liberty of the other person, for any of the following purposes:
* * *
(4) To engage in sexual activity, as defined in section 2907.01
of the Revised Code, with the victim against the victim's will[.]
 {¶ 11} The state presented the following evidence at trial. The state opened its case with the testimony of the victim, Ciera Hill. Miss Hill testified that she began to live with her father in the summer of 2001 when she was 14 years old.[1] At that time, they lived in a house on Garfield Avenue in Franklin County, Ohio. Over the next several years, corresponding to the time encompassed in the indictment, Miss Hill lived with her father at two other residences — one on Greenway Avenue and the other on Stoddard Avenue — before moving in with his mother, Loretta Mosley, on East Mound Street.
 {¶ 12} Miss Hill testified that her father first raped her a couple of months after she moved in with him. She explained that she had gotten into trouble at school and, as punishment, appellant gave her a choice: she could submit to a "whooping" or a "stick and lick," by which he meant he would lick her vagina and have sexual intercourse with her. Not wanting to be beaten, Miss Hill chose the stick and lick. Miss Hill testified that the next incidence of sexual abuse also occurred at Garfield Avenue. This time, also as a punishment, appellant forced her to masturbate him. She also recounted at least one instance when he forced her to perform fellatio.
 {¶ 13} Miss Hill indicated that her father gave her the choice of sex or a beating whenever he found out she was in trouble at school, which, according to her own estimation, was all of the time.[2] Miss Hill further testified that she tried to resist her father's sexual advances by squeezing her legs closed, telling him no or saying she didn't want to do it. He would do it anyway. She stated that she feared getting beaten if she did not continue to submit. When appellant did beat her, it was with a stick, belt or extension cord.
 {¶ 14} Miss Hill further testified that appellant continued to sexually abuse her at each of the other three residences they shared. As to the second residence, Greenway Avenue, Miss Hill testified as follows:
Q. * * * Would he ever come in and have sex with you the way that you described it on Greenway?
A. Yes.
Q. And how often would it happen, if you can even estimate?
A. Not really that often.
* * *
Q. But did it happen on Greenway?
A. Yes.
Q. Would it be the same type of thing?
A. Yes.
Q. Him having sex with you?
A. Yes.
Q. You were at times made to masturbate him?
A. Yes.
Q. How many times do you think he made you touch him in a sexual way, like, when I meant that, like in your words jack him off? How many times do you think that happened?
A. Not a lot.
Q. More than five times?
A. No.
Q. Okay. More than once?
A. Yes.
Q. Three, four times?
A. Yes.
Q. Okay, your estimate would be three or four times that you had to masturbate him?
A. Yes.
Q. What about, did he ever put any part of his mouth on to your body?
A. Yes.
Q. Can you tell the judge what that would involve?
A. Part of the stick and lick.
Q. Okay. Oh, okay. So every time that he stick you, in his words, he would lick?
A. Not all of the time.
Q. But sometimes?
A. Yes.
* * *
Q. How many times do you think that happened?
A. Like three or four times.
(Tr. Vol. II, at 73-75.) Miss Hill also affirmed that her father raped her at their residence on Stoddard Avenue. Additionally, when she and appellant moved in with Loretta Mosley on East Mound Street, she would usually sleep downstairs on the couch while her father occupied a room upstairs. However, appellant occasionally forced her to go to sleep in the upstairs room as punishment for misbehavior at school.
 {¶ 15} Miss Hill testified that the final instance of sexual abuse occurred while living on East Mound Street. On Thursday, December 9, 2004, appellant picked her up from school and learned that she was in trouble for falling asleep in class. After going to a local health clinic for treatment of an ingrown hair and visiting a friend, Miss Hill returned to her grandmother's house. When she arrived, her father was preparing dinner. Miss Hill related that appellant told her to go upstairs and put on her nightclothes. Miss Hill did as she was told and went upstairs to put on her nightgown. Soon after, appellant appeared in the room, "pulled his pants down, and he got on top of [me] and he had stuck his thing in and bent it until he came. Then he ejaculated on a pile of clothes." (Tr. Vol. II, at 84.) Appellant then left the room.
 {¶ 16} Miss Hill stated that she went to school the next day, Friday, after which she went to visit her friend Pamela Matthews. She spent the night two houses down from Pamela, at Tamika Summerville's house.[3] The next morning, Tamika asked her if appellant was sexually active with her. At first, Miss Hill denied any inappropriate behavior. However, when Pamela and Tamika continued to talk about it, Miss Hill told them what had been going on. At that point, Pamela called the police. Miss Hill was then taken to Grant Hospital for treatment, where she also disclosed her abuse to the examining nurse.
 {¶ 17} On further questioning, Miss Hill admitted that she had never told anyone at school, her former foster mother (with whom she stayed in touch), her case worker, or anyone else from Franklin County Children's Services about what had occurred over the past several years. She further testified that her grandmother had previously asked her if appellant was inappropriate with her, and she had lied to her by denying anything was happening. Miss Hill also admitted that she had once written a letter to a judge in which she appealed to have appellant released from jail. However, she explained that she had merely copied the letter in her own hand, as her uncle had actually composed the letter. She acknowledged that she did not believe her father had begun to sexually abuse her at the time she wrote the letter.
 {¶ 18} On cross-examination, defense counsel raised questions about Miss Hill's testimony, especially about the time period over which sexual abuse was alleged to have occurred. Counsel stressed that the letter Miss Hill had sent to the judge regarding her father was date stamped August 23, 2002, about a year after the initial date in the indictment. Counsel also elicited testimony to the effect that Miss Hill lived with her aunt from March 2004 until August 2004, thus lessening her exposure to appellant. Counsel emphasized that Miss Hill did not tell any of the people who had helped her in the past, although she testified that she was aware that they would have protected her from her father.
 {¶ 19} The state also presented the testimony of Pamela Matthews and Tamika Summerville. Both relayed their suspicions that appellant was sexually abusing Miss Hill, as well as Miss Hill's testimony regarding her disclosure of the abuse after the December 9, 2004 rape. The state then offered the testimony of Ms. Theresa Colbert, who is a registered nurse and the sexual assault nurse examiner who treated Miss Hill at Grant Hospital. Ms. Colbert testified that Miss Hill informed her that her father had vaginal intercourse with her and that the sexual activity had occurred over the past three years. Ms. Colbert also stated that Miss Hill believed she had intercourse with her father approximately 50 times over those three years. Appellant testified on his own behalf and denied all charges.
 {¶ 20} After reviewing the evidence in a light most favorable to the prosecution, we find that Miss Hill's testimony, if believed, is sufficient to prove each element of each count charged in the indictment. Miss Hill testified that she submitted to appellant's sexually abusive behavior to avoid a beating or because she was afraid to be beaten. She also testified that she was generally afraid of her father. "This fear of being punished if commands are not obeyed satisfies the elements of forcible rape." State v. Braddy, Cuyahoga App. No. 83462,2004-Ohio-3128, at ¶ 11, citing State v. Eskridge (1988),38 Ohio St.3d 56, 59.
 {¶ 21} Miss Hill further explained that the first instance of abuse involved a "stick and lick," during which appellant performed cunnilingus and penetrated her with his penis. "Vaginal rape and cunnilingus have distinct elements that do not correspond to such a degree that commission of one crime will result in commission of the other crime." State v. Burgess,162 Ohio App.3d 291, 301, 2005-Ohio-3747, at ¶ 36. In other words, each is a distinct act of sexual conduct that constitutes the commission of a separate act of rape. Miss Hill testified that she was also forced to perform fellatio and to masturbate appellant while living on Garfield Avenue. The former satisfies the elements of rape, while the latter is an instance of gross sexual imposition.
 {¶ 22} Miss Hill affirmatively answered the prosecutor's question as to whether appellant would "come in and have sex with [her] the way that [she] described it" on Greenway. Again, Miss Hill's testimony regarding being subjected to a "stick and lick" supports two separate counts of rape. In fact, Miss Hill testified that she believed appellant performed cunnilingus in addition to vaginal penetration "three or four times" on Greenway. This testimony supports a total of at least six counts of rape — three vaginal rape counts and three additional counts for cunnilingus — or possibly a total of eight counts of rape at the Greenway residence. Similarly, Miss Hill's testimony that appellant forced her to masturbate him three or four times supports at least three and up to four additional counts of gross sexual imposition.
 {¶ 23} Appellant argues that the victim's testimony is not concrete enough to support separate, multiple counts of rape or gross sexual imposition. However, Miss Hill's testimony that appellant subjected her to vaginal penetration and cunnilingus "three or four times," if believed, sufficiently satisfies each element of the crime charged for the specified number of occurrences. In cases of extended and continued sexual abuse, the victim need not recall each instance in vivid detail, so long as there is sufficient evidence to indicate a distinct act for each crime charged. At least one other appellate court has reached the same conclusion, stating:
In this case, the victim's testimony that defendant digitally penetrated her "three or four" times was sufficient evidence that those acts could have occurred four, rather than three times. Unlike [State v. Langston (1988), Cuyahoga App. No. 44154], where the child-victim could only say the rapes occurred "more than once," the victim's testimony in this case was sufficient to permit the jury to decide the precise number of times the rapes occurred. * * *
State v. White (1999), 135 Ohio App.3d 481, 489.
 {¶ 24} In addition to the instances of sexual abuse on Garfield and Greenway Avenues, Miss Hill testified that her father forced her to have intercourse at least once on Stoddard Avenue. Finally, Miss Hill recounted the last occasion of rape at her grandmother's house on East Mound Street. Thus, Miss Hill provided evidence to support three counts of rape and one count of gross sexual imposition at Garfield, up to eight counts of rape and four counts of gross sexual imposition on Greenway, one count of rape at Stoddard and a final count of rape on East Mound. In all, Miss Hill's testimony accounts for 13 counts of rape and five counts of gross sexual imposition. This is sufficient to support the ten counts of rape and five counts of gross sexual imposition charged in the indictment.
 {¶ 25} Moreover, Miss Hill is appellant's natural daughter. Therefore, each instance of rape also amounted to an act of sexual battery. R.C. 2907.03 ("No person shall engage in sexual conduct with another * * * [when] [t]he offender is the other person's natural or adoptive parent.") Thus, there is sufficient evidence to support the five counts of sexual battery charged in the indictment. Likewise, there is plentiful evidence to support the single count of kidnapping where Miss Hill testified that appellant would restrain her liberty in order to engage in sexual activity with her against her will. Accordingly, there is sufficient evidence in the record to establish each element implicated by each of the 21 counts for which appellant was found guilty.
 {¶ 26} We also find that the greater amount of credible evidence amply supports the conclusion reached by the trial court as the finder of fact. There is no indication that the trial court lost its way or otherwise created a manifest miscarriage of justice in reaching its verdict. The verdict is supported by sufficient evidence and corresponds to the manifest weight of the evidence. Accordingly, appellant's first assignment of error is overruled.
 {¶ 27} In his second assignment of error, appellant asserts that the trial court erred in permitting the introduction of inadmissible character evidence. Appellant's criticism is based on the testimony of Pamela Matthews and Tamika Summerville. Specifically, appellant argues that Ms. Matthews' testimony regarding her belief that the relationship appellant had with Miss Hill was "different" and Ms. Summerville's testimony indicating that "everybody" suspected appellant behaved in a sexually inappropriate manner with Miss Hill was inadmissible under Ohio Rules of Evidence 404(B), as well as R.C. 2907.02(D) through (E) and 2907.05(D) through (E). Additionally, appellant complains that the prosecution improperly elicited testimony from him regarding a specific instance of his own sexual activity during cross-examination.
 {¶ 28} A trial court is granted broad discretion with respect to the admission or exclusion of evidence during trial. State v.Sage (1987), 31 Ohio St.3d 173, 180. Thus, an appellate court will not reverse the trial court's decision absent an abuse of discretion. State v. Myers, 97 Ohio St.3d 335, 348, 2002-Ohio-6658, at ¶ 75. "The term `abuse of discretion' connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable." Blakemore v. Blakemore (1983),5 Ohio St.3d 217, 219.
 {¶ 29} Generally, evidence is admissible if it is relevant and the probative value of the evidence outweighs any danger of unfair prejudice, confusion of issues or of misleading a jury. Evid.R. 402 and 403. Evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Evid.R. 401. In addition to defining the general concepts of relevancy and admissibility, the Ohio Rules of Evidence provide various exceptions to the general rule. One such exception is found in Evid.R. 404, which addresses character evidence.
 {¶ 30} Pursuant to Evid.R. 404(A), "[e]vidence of a person's character * * * is not admissible for the purpose of proving that he acted in conformity therewith on a particular occasion." Id. Whereas Evid.R. 404(A) speaks to character evidence in general, Evid.R. 404(B) specifically excludes evidence of other crimes, wrongs or acts when offered to prove that the accused acted in conformity with that act. Moreover, in cases involving charges for rape and gross sexual imposition, the statutory "rape shield" laws further restrict the admissibility of character evidence. In either case, evidence regarding defendant is limited as follows:
Evidence of specific instances of the defendant's sexual activity, opinion evidence of the defendant's sexual activity, and reputation evidence of the defendant's sexual activity shall not be admitted under this section unless it involves evidence of the origin of semen, pregnancy, or disease, the defendant's past sexual activity with the victim, or is admissible against the defendant under [R.C. 2945.59], and only to the extent that the court finds that the evidence is material to a fact at issue in the case and that its inflammatory or prejudicial nature does not outweigh its probative value.
R.C. 2907.02(D) and 2907.05(D). Further, a trial court is instructed to hold a hearing, at or before any preliminary hearing, before admitting any testimony or evidence regarding the defendant's sexual activity. R.C. 2907.02(E) and 2907.05(E).
 {¶ 31} Appellant submits that the testimony of Pamela Matthews and Tamika Summerville amounted to character evidence in the form of unfounded lay opinions as to his sexual activity and innuendo as to his sexual reputation introduced to demonstrate that he acted in conformity with his reputation. Appellant also contends that the testimony elicited by the prosecutor regarding Miss Hill's birth mother's young age when Miss Hill was born was improper "other acts" evidence. Appellant argues that the trial court should not have allowed the testimony.
 {¶ 32} We note that appellant raised no objection to the disputed testimony during trial:
"It is a general rule that an appellate court will not consider any error which counsel for a party complaining of the trial court's judgment could have called but did not call to the trial court's attention at a time when such error could have been avoided or corrected by the trial court."
State v. Campbell (1994), 69 Ohio St.3d 38, 40, quotingState v. Childs (1968), 14 Ohio St.2d 56, paragraph three of the syllabus. Thus, appellant has waived all but plain error.State v. Hill (2001), 92 Ohio St.3d 191, 196; State v. DeBoe,
Huron App. No. H-02-057, 2004-Ohio-403, at ¶ 77; Crim.R. 52(B). "Notice of plain error under Crim.R. 52(B) is to be taken with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice." State v. Long
(1978), 53 Ohio St.2d 91, paragraph three of the syllabus. Plain error does not exist, and the trial court's decision will not be reversed, unless it can be said that "but for the error, the outcome of the trial clearly would have been otherwise." Statev. Williams, 99 Ohio St.3d 439, 458, 2003-Ohio-4164, at ¶ 40, quoting Long, supra, at paragraph two of the syllabus.
 {¶ 33} Having reviewed the facts of this case, and in light of the standard for plain error, we do not find that, but for the questioned testimony, the outcome of the trial would have been otherwise. The testimony now challenged by appellant did not speak to whether or not he was sexually abusing Miss Hill. While arguably character or reputation evidence, the womens' testimony is admissible for purposes other than demonstrating action in conformity with that reputation. For example, Tamika Summerville's statement that "everybody just had the suspicion" that appellant was sexually inappropriate with Miss Hill was not offered to prove that he was, in fact, abusing the victim. Instead, Ms. Summerville offered that testimony to explain why she approached Miss Hill to ask her if she was being abused. Even assuming that an objection had been raised, and the testimony was improperly admitted, it was not determinative to the outcome of the case. Therefore, we find no plain error.
 {¶ 34} Moreover, this case was tried to the bench, rather than to a jury. "[I]n a bench trial, a trial court is presumed to have considered only the relevant, material and competent evidence." State v. Addison, Franklin App. No. 03AP-1102,2004-Ohio-5154, at ¶ 10. Thus, we must presume that, even if the testimony was erroneously admitted into evidence, the trial court did not consider it in rendering its verdict. Accordingly, appellant's second assignment of error is overruled.
 {¶ 35} In his third assignment of error, appellant argues that he was denied his constitutional right to the effective assistance of counsel. Appellant's claim of ineffective assistance is premised on defense counsel's failure to object to the allegedly inadmissible testimony raised under the second assignment of error. We find appellant's third assignment of error to be without merit.
 {¶ 36} To establish a claim of ineffective assistance of counsel, appellant must satisfy the two-prong test set forth by the United States Supreme Court in Strickland v. Washington
(1984), 466 U.S. 668, 104 S.Ct. 2052. "First, the defendant must show that counsel's performance was deficient." Id. at 687. The inquiry is not subjective to the particular defendant. Instead, "the defendant must show that counsel's representation fell below an objective standard of reasonableness." Id. at 688. The defendant must also "show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." Id. at 687. In other words, the defendant must demonstrate that counsel's errors resulted in actual prejudice — "but for counsel's unprofessional errors, the result of the proceeding would have been different" — in order to gain a reversal based on ineffective assistance of counsel. Id. at 694.
 {¶ 37} Notably, the Strickland court observed that "there is no reason for a court deciding an ineffective assistance claim to approach the inquiry in the same order or even to address both components of the inquiry if the defendant makes an insufficient showing on one." Id. at 697. Appellant bases his claim of ineffective assistance on defense counsel's failure to object to the testimony discussed under the second assignment of error. Having found no plain error in the admission of the challenged testimony, it is clear that appellant cannot prove actual prejudice as required by Strickland. See State v. Cosolis,
Franklin App. No. 01AP-1070, 2002-Ohio-4302, at ¶ 53. Appellant's third assignment of error is also overruled.
 {¶ 38} In his fourth assignment of error, appellant alleges that the trial court deprived him of a fair sentencing hearing by denying him the right of allocution. At the time of sentencing, a trial court shall "address the defendant personally and ask whether he or she wishes to make a statement in his or her own behalf or present any information in mitigation of punishment." Crim.R. 32(A)(1); State v. Campbell (2000), 90 Ohio St.3d 320, paragraph one of the syllabus. While the court need not use the exact phrasing of the rule, it must unambiguously and personally address the defendant, "leav[ing] no room for doubt that the defendant has been issued a personal invitation to speak prior to sentencing." State v. Green (2000), 90 Ohio St.3d 352, quotingGreen v. United States (1961), 365 U.S. 301, 305, 81 S.Ct. 653,655.
 {¶ 39} The transcript from the sentencing hearing reveals that, after allowing counsel to speak, the court stated: "Thank you. Mr. Mosley, is there anything that you would like to say?" (Tr. Vol. III, at 480.) The transcript does not indicate any response from Mr. Mosley, verbal or non-verbal. Appellant argues that this lack of response indicates that the trial court continued to speak without interruption, thus failing to present an opportunity for him to speak.
 {¶ 40} We do not draw the same conclusion. The trial court complied with Crim.R. 32 by explicitly extending appellant a personal invitation to speak on his own behalf. Once this unconditional invitation is extended, it is up to the defendant to accept or decline comment. Though the record is silent as to appellant's decision, there is no doubt that the invitation and opportunity was provided. There is no basis in the record before us to reach any other conclusion. We find that the trial court acted according to Crim.R. 32(A) and sufficiently safeguarded appellant's right to allocution. Accordingly, appellant's fourth assignment of error is not well-taken and is overruled.
 {¶ 41} Appellant's fifth and sixth assignments of error will be addressed together as each challenges the propriety of the sentence imposed by the trial court. Both assignments of error ultimately contest his sentence as being contrary to law. R.C.2953.08(A)(4). Appellant's fifth assignment of error asserts that the trial court committed reversible error by imposing consecutive terms of actual incarceration in violation of R.C.2929.14(E)(4). Similarly, appellant's sixth assignment of error claims that the trial court erred in sentencing him to greater than minimum terms contrary to the provisions of R.C. 2929.14(B). Appellant bases each assignment of error on the trial court's failure to provide statutorily mandated findings to support the imposition of consecutive, longer than minimum terms for his crimes.
 {¶ 42} Ohio's sentencing statutes have recently been subjected to much scrutiny and modification. In State v.Foster, 109 Ohio St.3d 1, 2006-Ohio-856, the Supreme Court of Ohio followed the lead of the United States Supreme Court, applying Apprendi v. New Jersey (2000), 530 U.S. 466,120 S.Ct. 2348, and Blakely v. Washington (2004), 542 U.S. 296,124 S.Ct. 2531 to Ohio's felony sentencing statutes. In accord with those holdings, and the principle that a defendant's Sixth Amendment right to a trial by jury is violated when judicial fact-finding results in a sentence greater than supported by a jury verdict or a defendant's own admissions, the Supreme Court of Ohio found several provisions of Ohio's sentencing scheme to be unconstitutional. As is pertinent here, the Foster court declared R.C. 2929.14(B) and 2929.14(E)(4) unconstitutional and severed them from the remainder of the sentencing statutes:
We therefore hold that R.C. 2929.14(B) and (C) and2929.19(B)(2) are capable of being severed. After the severance, judicial factfinding is not required before a prison term may be imposed within the basic ranges of R.C. 2929.14(A) based upon a jury verdict or admission of the defendant. We further hold that R.C. 2929.14(E)(4) and 2929.41(A) are capable of being severed. After the severance, judicial factfinding is not required before the imposition of consecutive prison terms. * * *
Id. at ¶ 99. The court further provided, pursuant to U.S. v.Booker (2005), 543 U.S. 220, 125 S.Ct. 738, that its holding applies to all cases on direct review at the time of the decision.
 {¶ 43} Accordingly, we must apply Foster to the instant appeal. However, unlike any of the defendants in Foster,
appellant's sentencing hearing took place after the United States Supreme Court released its decision in Blakely. Thus, appellant had the opportunity to object to any constitutional error in his sentencing, but failed to do so. Constitutional arguments not raised at trial are generally deemed waived. State v. Awan
(1986), 22 Ohio St.3d 120, paragraph three of the syllabus. Accordingly, while the law announced in Foster applies to our review, we need not remand this case for a second sentencing hearing. Instead, we apply the "ordinary prudential doctrine" of waiver to find that appellant is not entitled to a new sentencing hearing. See Booker, supra, 543 U.S. at 268; State v.Draughon, Franklin App. No. 05AP-860, 2006-Ohio-2445, at ¶ 7-8.
 {¶ 44} Appellant did not raise any objections to his sentence, let alone one based on his constitutionalSixth Amendment rights, in the trial court. Therefore, appellant waived any Blakely argument. Draughon, at ¶ 8. Further, as a result of Foster, "[t]rial courts have full discretion to impose a prison sentence within the statutory range and are no longer required to make findings or give their reasons for imposing maximum, consecutive, or more than the minimum sentences." Id. at paragraph seven of the syllabus. Thus, a trial court is no longer required — or permitted — to make findings under R.C. 2929.14(B) or 2929.14(E)(4) in order to impose a non-minimum or consecutive sentence. Accordingly, appellant's fifth and sixth assignments of error are overruled.
 {¶ 45} In addition to appellant's six assignments of error, the state raised its own single assignment of error on cross-appeal. The state asserts that the trial court erroneously found that Mrs. Mosley involuntarily consented to a search of her home. In light of our decision overruling appellant's assignments of error, the outcome of any examination of the state's assignment of error is irrelevant to the final disposition of this case. Thus, we decline to address the state's arguments and find the cross-assignment of error moot.
 {¶ 46} Based on the foregoing, we overrule appellant's six assignments of error and find the prosecution's cross-assignment of error to be moot. The judgment of the Franklin County Court of Common Pleas is affirmed.
Judgment affirmed.
Sadler and French, JJ., concur.
[1] Miss Hill had most recently lived in two different foster homes after being removed from her mother's care when she was in the fifth grade.
[2] On direct examination, Miss Hill stated, "I was always in trouble [at school]."
[3] Tamika Summerville is Pam Matthews' niece.