OPINION
{¶ 1} Appellant, Bobbie Griffith ("appellant"), filed this appeal seeking reversal of the decision rendered by the Franklin County Court of Common Pleas convicting him of gross sexual imposition. For the reasons that follow, we affirm the trial court's decision.
 {¶ 2} From 1991 until 2001, appellant was married to Rhonda Griffith, now known as Rhonda Rust ("Rust".) Rust's daughters from a previous marriage, one of whom was B.K., lived with them and two additional daughters born of their marriage.[1] B.K. felt close to appellant, referring to him as her father.
 {¶ 3} Appellant was employed as a firefighter, and would work shifts in which he would be on duty for 24 hours at a time, and would then have 48 hours off. In addition, appellant worked a second job at a hospital. Appellant would generally arrive home from work between 2:30 and 3:00 a.m. B.K. testified that in 1998, shortly after she turned 13 years old, appellant began coming in to her bedroom when he got home from work. B.K. stated that the first time this occurred, appellant placed his hand on her breasts. She woke up and rolled over, and he left without saying anything. (Tr. at 29-31.) Initially, B.K. did not tell anyone what happened. She testified that "I tried to stay away from him. I still tried to act like a family, but I was scared. I don't want to be around him." (Tr. at 30.)
 {¶ 4} Similar incidents began occurring some time later. B.K. testified that appellant would come in to her bedroom after arriving home from work. At first, he would reach under her shirt and touch her breasts. Later, he would put his hand inside her underwear and touch her vaginal area. (Tr. at 32-33.) Each time, B.K. would roll over and pretend to be asleep, and appellant would leave without saying anything. (Tr. at 33.) B.K. began to wear a bra and tighter clothes to bed, but the incidents continued. (Tr. at 40-42.) Nothing was ever said by either appellant or B.K. during these incidents. B.K. testified that these incidents occurred two or three times a week. (Tr. at 34.) B.K. also testified that during one of these incidents, appellant took her hand from under the bed covers and placed it on his penis. After a few seconds, she pulled her hand away. Appellant then left, again without saying anything. (Tr. at 36.) The last incident occurred some time after Christmas of 2000. In February of 2001, appellant moved out of the house, and filed for divorce some time thereafter.
 {¶ 5} As corroboration for B.K.'s testimony, the prosecution entered into evidence journals she had written over the years. An entry dated July 30, 1998 stated:
 I trusted the man with my life. Now I don't even trust him with my socks. I told John and Trisha, because they are so close to me. If I tell my mom, she would probably believe him over me, and it would not stop. I wish that my mom goes with me to the orthodontist with us tomorrow. I was gave two good luck charms to help me through the night. Nothing happened. I really hope nothing happens tomorrow night.
(Tr. at 46-47.) In an entry dated August 2, 1998, B.K. referred to appellant as one of her worst enemies and stated, "I hope God protects me tonight." (Tr. at 50.) In other entries, B.K. wrote about being angry at appellant, and about her mother not believing her, but B.K. was unable to remember precisely what these entries were referring to. (Tr. at 66, 71.)
 {¶ 6} At one point, Rust found B.K.'s journal and read it. Rust questioned B.K. about the journal, but did not believe what B.K. told her was happening, and took no action. (Tr. at 62.) Rust testified that she spoke to appellant after reading B.K.'s journal, and that he had convinced her that the references were actually to B.K.'s boyfriend at the time, who was three years older than her. (Tr. at 121-122.) Rust also testified that she would occasionally find appellant sitting on B.K.'s bed during the night. When asked why he was there, appellant said B.K. was having nightmares and he was checking on her. (Tr. at 124.) After appellant filed for divorce, Rust testified that she came to believe the allegations B.K. made against appellant were true. (Tr. at 129, 133-134.)
 {¶ 7} Stacy Hodges ("Hodges"), a friend of B.K.'s, also testified. Hodges stated that one night when she was staying with B.K., appellant walked into the bedroom. Hodges was under a blanket talking to her boyfriend when appellant entered the room. When appellant saw Hodges was there, he said he was just checking on them, and then left. (Tr. at 113-114.)
 {¶ 8} B.K.'s cousin, M.B., testified as well.[2] M.B. stated that appellant had molested her during a visit to the house. M.B. stated that she was sleeping on the floor when she felt someone touching her breasts and vagina. (Tr. at 150.) She opened her eyes and saw it was appellant. Appellant then left without saying anything. (Tr. at 152.) M.B. came forward after appellant had moved out of the house and after B.K. had come forward with her story. (Tr. at 152.)
 {¶ 9} Appellant was initially indicted on twelve counts. Count one alleged that appellant committed gross sexual imposition in violation of R.C. 2907.05 between March 26, 1998 and June 1, 1998, by having compelled B.K. to submit to sexual contact by force or the threat of force. Counts Two through Four alleged that appellant committed gross sexual imposition by having compelled B.K. to submit to sexual conduct by force or threat of force, but set the time period as between March 26, 1998 and December 31, 2000. Counts five through seven also alleged that appellant committed gross sexual imposition by having compelled B.K. to submit to sexual contact by force or threat of force, but set the time period as between December 1, 2000 and December 31, 2000. Count eight alleged that appellant committed a violation of R.C. 2907.02. Count nine alleged that appellant committed sexual battery in violation of R.C. 2907.03. Counts ten and eleven alleged appellant committed gross sexual imposition by having compelled M.B. to submit to sexual contact by force or threat of force. Count twelve alleged appellant disseminated matter harmful to juveniles in violation of R.C. 2907.31.
 {¶ 10} On June 10, 2004, a jury found appellant not guilty of counts five through nine, which were the allegations involving gross sexual imposition, rape, and sexual battery during December of 2000 with B.K. being the victim. The jury was unable to reach a verdict on the remaining counts. The remaining counts were then tried to the bench beginning July 12, 2005. The court found appellant not guilty of counts ten and eleven, which had alleged gross sexual imposition with M.B. as the victim, and the court dismissed count twelve pursuant to Crim. R. 29. The court found appellant guilty of the remaining counts one through four. The court sentenced appellant to one year of incarceration on each of the four counts, with the four sentences to be served concurrently, for a total term of incarceration of one year, and found appellant to be a sexually oriented offender.
 {¶ 11} Appellant then filed this appeal, alleging four assignments of error:
 First Assignment of Error: The evidence was legally insufficient to support appellant's convictions.
 Second Assignment of Error: The court erroneously overruled appellant's motion for acquittal pursuant to Criminal Rule 29.
 Third Assignment of Error: Appellant's convictions were against the manifest weight of the evidence.
 Fourth Assignment of Error: Imposition of more than the minimum sentence when the defendant had not previously been imprisoned, based on facts not found by a jury nor admitted by the defendant, violated appellant's right to trial by jury as guaranteed by the Sixth Amendment of the United States Constitution and Article I, Section 10 of the Ohio Constitution.
 {¶ 12} The first three assignments of error are interrelated, and will be addressed together. As set forth in State v. Jenks (1991),61 Ohio St.3d 259. 574 N.E.2d 492, when reviewing the sufficiency of the evidence supporting a criminal conviction, an appellate court must examine the evidence submitted at trial to determine whether such evidence, if believed, would convince an average person of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. Id., at paragraph two of the syllabus. See, also, Jackson v. Virginia (1979),443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560.
 {¶ 13} This test raises a question of law and does not allow the court to weigh the evidence. State v. Martin (1983), 20 Ohio App.3d 172,485 N.E.2d 717. Rather, the sufficiency of the evidence test "gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts."Jackson, supra, at 319. Accordingly, the reviewing court does not substitute its judgment for that of the fact finder. Jenks, supra, at 279.
 {¶ 14} In determining whether a verdict is against the manifest weight of the evidence, the appellate court acts as a "thirteenth juror." Under this standard of review, the appellate court weighs the evidence in order to determine whether the trier of fact "clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." State v. Thompkins (1997),78 Ohio St.3d 380, 678 N.E.2d 541. However, in engaging in this weighing, the appellate court must bear in mind the fact finder's superior, first-hand perspective in judging the demeanor and credibility of witnesses. SeeState v. DeHass (1967), 10 Ohio St.2d 230, 227 N.E.2d 212, at paragraph one of the syllabus. The power to reverse on "manifest weight" grounds should only be used in exceptional circumstances, when "the evidence weighs heavily against the conviction." Thompkins, supra, at 387. When reviewing a trial court's denial of a motion for acquittal under Crim. R. 29, appellate courts apply the same standard as that which applies to claims regarding sufficiency of the evidence. Id. at 386.
 {¶ 15} R.C. 2907.05 provides, in relevant part, that:
 (A) No person shall have sexual contact with another, not the spouse of the offender; cause another, not the spouse of the offender, to have sexual contact with the offender; or cause two or more other persons to have sexual contact when any of the following applies:
 (1) The offender purposely compels the other person, or one of the other persons, to submit by force or threat of force.
 {¶ 16} One of appellant's arguments with respect to the claim that the trial court's verdict was not supported by sufficient evidence is that the evidence presented at trial failed to establish the element of force. R.C. 2901.01(A)(1) defines "force" as "any violence, compulsion, or constraint physically exerted by any means upon or against a person or thing." Most of the cases applying the definition of force in the context of sexual offenses have involved charges of rape in violation of R.C. 2907.02. However, the principles set forth in those cases apply equally to cases of gross sexual imposition. State v. Riggs, Franklin App. No. 04AP-1279, 2005-Ohio-5244.
 {¶ 17} To prove the force element of a sexual offense, the state must establish force beyond that force inherent in the crime itself.State v. Dye (1998), 82 Ohio St.3d 323, 1998-Ohio-234, 695 N.E.2d 763. The force necessary to commit a sexual offense where force is an element depends on the circumstances, including the age, size, and strength of the parties and their relation to each other. State v. Eskridge (1988),38 Ohio St.3d 56, 526 N.E.2d 304. Courts have long recognized the coercion inherent in cases involving parents or other figures of authority sexually abusing children in their care. In those cases, courts have held that "force need not be overt and physically brutal, but can be subtle and psychological. As long as it can be shown that the * * * victim's will was overcome by fear or duress, the forcible element * * * can be established." Id. at 58-59. In such situations, even a minimal amount of physical exertion will satisfy the force element. SeeState v. Lillard, Cuyahoga App. No. 69242.
 {¶ 18} In this case, appellant was B.K.'s stepfather, and therefore was in a position of some authority over her. The evidence showed that appellant never made any statements that would imply any threat to B.K. regarding the incidents, either while they were happening or after the fact in an attempt to prevent her from telling anyone what was happening. However, the evidence did establish that appellant had to exert some amount of physical effort in order to reach inside B.K.'s clothing to accomplish his purpose. See State v. Rutan, Franklin App. No. 97AP-389, State v. Clay, Medina App. No. 04CA-33-M, 2005-Ohio-6. This is particularly the case for those incidents outlined in counts two through four of the indictment, which alleged incidents that occurred after the first time, given B.K.'s testimony that she began to wear bras and tighter clothing to bed in an effort to set up a barrier to appellant's actions. We also note that B.K. testified about one incident in which appellant placed B.K.'s hand on his penis, an act that would have required him to exert some amount of force. We cannot say that no reasonable trier of fact could have found that the element of force was established here. Therefore, there was sufficient evidence before the court to support the finding of force necessary for a charge of gross sexual imposition.
 {¶ 19} The remainder of appellant's argument regarding the first three assignments of error has to do with the credibility of the evidence and witnesses. Appellant argues that B.K. had a motive to fabricate charges against appellant, given appellant's disapproval of her relationship with an older boyfriend. Appellant also points to the fact that Rust initially refused to believe B.K.'s allegation when she first read B.K.'s journals, and only subsequently changed her view and came to believe B.K. after appellant filed for divorce. Although it may be possible to question some of the motivation for the timing involved here, especially the timing of Rust's decision to change her view of B.K.'s credibility regarding the allegations. However, the trial court, as the trier of fact, was in a position to evaluate these issues and determine what weight to give them. Furthermore, Rust's opinion regarding B.K.'s credibility is not particularly relevant, since it was the province of the trier of fact to make the ultimate decision on that point.
 {¶ 20} Appellant also points to inconsistencies between B.K.'s testimony in the second trial to the bench and statements contained in B.K.'s journals, testimony offered by other witnesses, and testimony in the earlier jury trial. There are no direct statements contained in B.K.'s journal regarding any sexual abuse by appellant. Instead, there are only general statements reflecting B.K.'s anger toward appellant, and vague references to things appellant did. Appellant also points to the fact that one of the journal entries refers to B.K. having told her friend, Trisha, and her boyfriend John, something that had happened, but the state did not call either person to testify about what B.K. told them. Finally, appellant points to B.K.'s testimony in which she claimed to have told her friends Stacy and Stephanie Hodges about the abuse. In the earlier jury trial, Stacy Hodges testified that B.K. had not told her about the abuse.
 {¶ 21} We cannot say that these inconsistencies, whether taken individually or cumulatively, necessitate a finding that the trial court acting as trier of fact lost its way in finding appellant guilty beyond a reasonable doubt based on the evidence presented. The court was in a position to consider B.K.'s demeanor and weigh her credibility, as well as to consider the weight to be given to all the other testimony. This does not appear to be one of the rare cases in which the convictions were against the manifest weight of the evidence.
 {¶ 22} Consequently, appellant's first three assignments of error are overruled.
 {¶ 23} In his fourth assignment of error, appellant argues that the trial court erred when it sentenced him to a period greater than the minimum sentence applicable to fourth degree felonies based on facts that were neither considered by a jury nor admitted by defendant. Appellant relies on the line of United States Supreme Court cases that culminated in Blakely v. Washington (2004), 542 U.S. 296,124 S.Ct. 2531, 159 L.Ed.2d 403, in which the court held that state sentencing schemes that allow for enhancement of sentencing beyond the statutory maximum based on findings made by the court rather than the jury violate the constitutional rights to a jury trial. The Ohio Supreme Court applied the Blakely ruling to Ohio's statutory sentencing provisions and held several provisions unconstitutional, including those relating to non-minimum sentences. State v. Foster (2006), 109 Ohio St.3d 1,2006-Ohio-856, 845 N.E.2d 470.
 {¶ 24} Since Foster, we have held in a number of cases that aBlakely challenge is waived if a defendant sentenced after theBlakely decision failed to raise the decision in the trial court.State v. Draughon, Franklin App. No. 05AP-860, 2006-Ohio-2445; State v.Mosley, Franklin App. No. 05AP-701, 2006-Ohio-3102; State v.Bartley, Franklin App. No. 06AP-159, 2006-Ohio-4989. In this case, there is no indication that appellant raised Blakely at the time of his sentencing. Therefore, appellant waived application of Blakely to his sentence, and his fourth assignment of error is consequently overruled.
 {¶ 25} Appellant also includes in his brief an argument that his trial counsel's failure to raise Blakely at his sentencing hearing constituted ineffective assistance of counsel in violation of his Sixth Amendment
right to counsel. See Strickland v. Washington (1984), 466 U.S. 668,104 S.Ct. 2052, 80 L.Ed.2d 674. However, appellant failed to designate this as a separate assignment of error. Pursuant to App. R. 12(A)(1), we are permitted "to sustain or overrule only assignments of error and not mere arguments." In re Estate of Taris, Franklin App. No. 04AP-1264,2005-Ohio-1516, at ¶ 5.
 {¶ 26} Having overruled all of appellant's assignments of error, we affirm the decision rendered by the trial court.
Judgment affirmed.
 BROWN, J., concurs, BRYANT, J., concurs in part and dissents in part.
[1] B.K. was 20 years old at the time of trial in this matter. However, since she was a minor at the time the events giving rise to this case occurred, we use her initials for identification.
[2] M.B. was also a minor at the time these events occurred. Therefore, we use her initials for identification.