DECISION
{¶ 1} Defendant-appellant, Kevan M. Trewartha (" appellant"), appeals from a judgment of the Franklin County Court of Common Pleas finding him guilty, pursuant to a jury verdict, of felonious assault, with specification, in violation of R.C.2903.11. For the following reasons, we affirm that judgment.
 {¶ 2} This case arose out of events occurring on July 17, 2002 ("the incident"). By indictment filed on August 22, 2002, appellant was charged with two counts of felonious assault in case No. 02CR-5063. The first count alleged the use of a handgun and carried a firearm specification; the second count alleged that the weapon was a shovel. Subsequently, on October 9, 2002, appellant was indicted by the same grand jury in case No. 02CR-6003, which charged appellant with improperly discharging a firearm into a habitation. These cases were consolidated, and following relevant facts were adduced at trial.
 {¶ 3} Jessica Nichols (" Nichols"), her boyfriend, Charles Druschel (" Druschel"), and his brother, Richard Druschel, lived together in an apartment located at 1453 Blaine Avenue in Franklin County, Ohio (" the apartment"); all three were signatories to the lease agreement. The Druschels and appellant were childhood friends. At or around the time of the incident, appellant had been living with the Druschels and Nichols in the apartment, although there was evidence to suggest that he had been in the process of moving out. The circumstances by which appellant came to live with the Druschels and Nichols are not clear from the record, nor is it clear how long appellant had been living there and whether he paid rent.
 {¶ 4} On the day in question, Nichols looked outside her kitchen window and noticed Michael Greer (" Greer") in front of the apartment, playing with a knife, flipping it open and closed. Greer was the brother of one of Nichols' friends, and lived around the corner. Josh Bolin (" Bolin"), an acquaintance of the individuals herein, was also present. Appellant arrived with his friend, Chad Anderson (" Anderson"), and confronted Greer about a rumor he heard. Apparently, appellant had been robbed, and he received information that Greer had been involved. The argument escalated when appellant, in an effort to intimidate Greer, pulled out a gun and fired shots in the air and on the ground. These shots narrowly missed Greer; one penetrated a wall in the apartment.
 {¶ 5} Greer ran into the apartment, grabbed Nichols, and positioned himself behind her. He held a knife to her throat, and used her as a shield. Appellant, Druschel, Bolin, and Anderson ran in after Greer. Inside, Druschel knocked the knife out of Greer's hand, and forced him to the floor, whereupon, Druschel, appellant, Anderson, and Bolin beat him. Shots were fired and the group disbanded. Greer ran down the block, pushed his way into a stranger's home, and called his mother. His next memory is waking up in the ambulance on his way to the hospital. The evidence established that Greer had been hit in the ankle by one of the shots that had been fired in the apartment. Appellant was the only individual identified as having a firearm during the altercation with Greer, although no witness could identify the individual who actually fired the shots in the apartment.
 {¶ 6} Detective James Day of the Columbus Police Department interviewed Greer in the hospital, and then proceeded to the apartment, where he found Druschel and another individual sitting on the porch. Soon thereafter, Brandy Swank (" Swank"), appellant's girlfriend, arrived at the scene with her father. They approached Detective Day and asked if they could move appellant's furniture, which was in the front yard. Swank also told Detective Day where the gun that appellant had at the scene could be located, as appellant had told her of its location. Pursuant to the information provided by Swank, appellant's gun, a .357 magnum, was recovered from the garage of Raymond Tackett, the father of one of appellant's friends. At the behest of Swank and her father, appellant turned himself in at the Whitehall Police Department.
 {¶ 7} At trial, Nichols, Druschel, and Greer testified that State's Exhibit one, the.357 magnum recovered from Mr. Tackett's garage, was the gun appellant had with him the day of the incident. Swank testified that was the only firearm that appellant had at the time, and both Nichols and Druschel testified that they had seen appellant with that particular firearm on other occasions. Also at trial, Druschel admitted that in exchange for testifying against appellant, he had pleaded guilty to an assault, misdemeanor of the first degree, and received six months probation, for his participation in the events that occurred on July 17, 2002. He also admitted that there had been blood on the kitchen floor from the fight, and that he had cleaned it up.
 {¶ 8} Thomas Burton worked for the Columbus Police Department as a detective in the Crime Scene Search Unit, and was called to the scene to collect evidence. Detective Burton testified that he recovered a .22 caliber revolver in a holster from a headboard in one of the bedrooms, although no .22 caliber ammunition or shell casings were found. In the closet of another bedroom, he found nine live rounds of .38 caliber ammunition, an open container of .45 caliber ammunition, and a speedloader containing.38 caliber ammunition. For safety purposes, Detective Burton testified that the .22 caliber revolver was dismantled at the property room.
 {¶ 9} Mark Green, a latent fingerprint examiner with the Columbus Police Department, testified that he examined the .357 magnum but did not find any latent fingerprints. He explained that it was possible to touch a surface and not leave prints, depending on the surface and/or the perspiration on one's hand. He further explained that it was "almost impossible to get prints off" a rubber grip, and in the past eight years, he "may have gotten maybe five prints off a rubber grip, if that." (Tr. at 241.)
 {¶ 10} Mark J. Hardy, a firearms and ballistic expert with the Columbus Police Department, testified that he examined the .357 magnum and "detected no problems" with that "particular weapon during [his] examination and test-fire." (Tr. at 252.) He further testified that he did not examine the .22 caliber revolver recovered at the apartment for operability, as he had not been requested to do so. Mr. Hardy also explained that .38 caliber ammunition can be fired from a .357 magnum, whereas .45 caliber ammunition could not.
 {¶ 11} At the close of the State's case and at the conclusion of all the evidence, appellant moved to dismiss, pursuant to Crim.R. 29, two counts of felonious assault in case No. 02CR-5063. Without objection from the State, the court granted appellant's motion. The court denied appellant's motion to dismiss the count for improper discharge of a firearm at or into a habitation or in a school safety zone in case No. 02CR-6003, although it did dismiss the gun specification associated with that count.
 {¶ 12} The jury found appellant guilty of one count of discharging a firearm at or into a habitation or school and one count of felonious assault. The trial court sentenced appellant to a term of imprisonment totaling seven years, to run concurrent to his sentence in an unrelated case.
 {¶ 13} Appellant appeals, assigning the following three assignment of errors:
[1.] THE PROSECUTING ATTORNEY'S REMARKS DURING REBUTTAL CONSTITUTED PROSECUTORIAL MISCOND-UCT WHICH DEPRIVED APPELLANT OF A FAIR TRIAL IN VIOLATION OF THE FOURTEENTH AMENDMENT TO THE UNITED STATES CONSTITUTION AND COMPARABLE PROVISIONS OF THE OHIO CONSTITUTION.
[2.] THE TRIAL COURT ERRED IN IMPOSING NONMINIMUM SENTENCES ON APPELLANT WHERE THE FACTS NECESSARY TO IMPOSE SUCH SENTENCES HAD NEITHER BEEN PROVEN TO A JURY NOR ADMITTED BY APPELLANT, THEREBY DEPRIVING APPELLANT OF HIS RIGHT TO A JURY TRIAL AND DUE PROCESS OF LAW AS GUARANTEED BY THE SIXTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION AND COMPARABLE PROVISIONS OF THE OHIO CONSTITUTION.
[3.] THE TRIAL COURT ABUSED ITS DISCRETION IN IMPOSING NON-MINIMUM SENTENCES ON APPELLANT, AS SUCH SENTENCES ARE CONTRARY TO LAW AND ARE NOT SUPPORTED BY THE RECORD FROM THE SENTENCING HEARING.
 {¶ 14} In his first assignment of error, appellant contends that prosecutorial misconduct occurred during the rebuttal portion of closing argument, when the prosecutor "twice mischaracterized critical pieces of evidence from the State's case-in-chief." (Appellant's brief, at 3.) Appellant contends that these mischaracterizations of evidence deprived him of his right to a fair trial in violation of the Fourteenth Amendment to the Unites States Constitution and comparable provisions of the Ohio constitution.
 {¶ 15} Courts afford prosecutors wide latitude in making closing arguments. State v. Benge (1996), 75 Ohio St.3d 136,141. Whether the prosecutor's remarks constitute misconduct requires analysis as to: (1) whether the remarks were improper; and, if so, (2) whether the remarks prejudicially affected a defendant's substantial rights. State v. Noling,98 Ohio St.3d 44, 2002-Ohio-7044, at ¶ 91. To demonstrate prejudice, a defendant must show that the improper remarks or questions were so prejudicial that the outcome of the trial would clearly have been otherwise had they not occurred. State v. Campbell (1994),69 Ohio St.3d 38, 51.
 {¶ 16} We begin by noting that appellant has failed to cite to any legal authority relative to this assignment of error. As such, he has not met his burden of affirmatively demonstrating error on appeal. App.R. 16(A)(7); State ex rel. Petro v. Gold,
Franklin App. Nos. 04AP-863 and 04AP-873, 166 Ohio App.3d 371;In re C.C., Franklin App. No. 04AP8-83, 2005-Ohio-5163, at ¶ 80. In the interests of justice, however, we will address this assignment of error.
 {¶ 17} Appellant's first allegation of prosecutorial misconduct is that during the prosecutor's rebuttal in closing arguments, he "inaccurately stated that appellant's furniture had been moved out of the residence where the shooting occurred." (Appellant's brief at 4.) Appellant claims this misrepresentation "went directly to an element of the charge of improperly discharging a fireman, which requires that the offender have been without privilege to do so." (Id.) Thus, according to appellant, the prosecutor undercut his defense by implying that appellant did not live in the apartment, and therefore, he was without privilege to discharge his firearm. We find appellant's argument unpersuasive.
 {¶ 18} We note initially that appellant failed to object when the prosecutor first commented on the existence of appellant's furniture in the front yard, and how that affected his assertion of privilege. (Tr. at 361.) The failure to object to the prosecution's closing argument, absent plain error, constitutes a waiver. State v. Slagle (1992), 65 Ohio St.3d 597, 604.
 {¶ 19} In any event, there was evidence before the jury that appellant was in the process of moving out of the apartment. Specifically, Detective Day testified, without objection, that when Swank and her father arrived at the scene, they explained that appellant "was in the process of moving" out of the apartment, and requested permission to retrieve his furniture from the front yard. (Tr. 176.) The jury was also aware that appellant was not a signatory to the lease agreement, and there was no evidence before the jury that the signatories to the lease agreement gave appellant permission to discharge his firearm. Although appellant now claims that Detective Day's testimony was hearsay and should not have been utilized by the prosecutor during rebuttal, this argument rings hollow in light of his failure to object at trial. See, e.g., State v. Petro (1947),148 Ohio St. 473, 500 (" When hearsay testimony is admitted without objection it may properly be considered and given its natural probative effect as if it were in law admissible, the only question being with regard to how much weight should be given thereto."); Bank One Secs. Corp. v. Jaworowski (May 31, 1996), Montgomery App. No. 15641; State v. Nichols (1976),48 Ohio App.2d 330, 331.
 {¶ 20} Viewed in context, we do not find that the prosecutor's comment was improper. Rather, we find it was a reasonable inference that could be drawn from the evidence. In this respect, the prosecution is afforded considerable latitude in closing argument, and a prosecutor may comment upon the testimony and other evidence, and may suggest reasonable inferences to be drawn thereon. State v. Carson, Franklin App. No. 05AP-13, 2006 Ohio 2440, at ¶ 56.
 {¶ 21} Furthermore, even had the prosecutor's remark been improper, the comment was brief and did not "permeate the entire atmosphere of the trial." State v. Tumbleson (1995),105 Ohio App.3d 693, 699 (" Even if a prosecutor's statements are improper, reversal for prosecutorial misconduct is warranted only if it `permeates the entire atmosphere of the trial.'"), quotingUnited States v. Warner (C.A.6, 1992), 955 F.2d 441, 456, certiorari denied (1992), 505 U.S. 1227, 112 S.Ct. 3050. We also note that the trial court clearly instructed the jury that opening and closing arguments were not evidence, but the opinion and observations of counsel. As such, the jury is presumed to have followed the instructions of the court. State v. Raglin
(1998), 83 Ohio St.3d 253, 264; State v. Henderson, Franklin App. No. 04AP-1212, 2005-Ohio-4970, at ¶ 19 (citations omitted).
 {¶ 22} As a final matter, even if the prosecutor's comments were improper as appellant contends, appellant has failed to show resulting prejudice to establish prosecutorial misconduct. Statev. Keenan (1993), 66 Ohio St.3d 402. Indeed, appellant has failed to provide any legal analysis regarding how his rights were prejudicially affected, except to argue that "[i]n the context of the evidence presented in this case, and considering the particular circumstances of the prosecutor's statements, it is difficult to have confidence in the fairness of the jury's verdict." (Appellant's brief, at 4.) Such a conclusory statement, however, without more, is insufficient to show prejudice. See, e.g., Sutton v. United States (Jan. 4, 2006), E.D.Va. Nos. 2:02cr65 and 2:05cv91.
 {¶ 23} Appellant contends the second instance of prosecutorial misconduct occurred when the prosecutor misrepresented the operability of the .22 caliber revolver recovered at the scene. According to appellant, this misrepresentation "improperly and unfairly undercut" his defense, which was that the .22 caliber revolver could have been used to shoot Greer, and not the .357 magnum tied to appellant through the State's witnesses.
 {¶ 24} A review of the transcript reveals that after the prosecutor commented on the operability of the .22 caliber revolver, appellant's counsel objected, and the trial court sustained that objection. Thereafter, the jury was instructed that the opening and closing statements of counsel are not evidence and should not be considered as such. The court further instructed the jury: "[s]tatements or answers the court struck that or which you were instructed to disregard are not evidence and must be treated as though you never heard them. You must not speculate as to why the court sustained an objection to any question or what the answer might have been. You must not draw any inference or speculate on the truth of any suggestion included in a question that was not answered." (Jury Instructions, at 3.) Thus, even if the prosecutor misstated the operability of the .22 caliber revolver, this remark could not be said to have prejudiced appellant, given the court's instructions to the jury. Raglin, supra. To that end, we note that appellant does not allege, let alone, demonstrate, that the jury disregarded the court's instruction.
 {¶ 25} Based on the foregoing, we do not find the existence of prosecutorial misconduct under the facts and circumstances of the case sub judice. Accordingly, we overrule appellant's first assignment of error.
 {¶ 26} Appellant's second and third assignments of error will be addressed together, as each challenges the propriety of the sentence imposed by the trial court. Both assignments of error ultimately contest his sentence as being contrary to law. Appellant's second assignment of error asserts that the trial court imposed non-minimum sentences in violation of jury trial principles afforded by the Sixth Amendment to the United States Constitution and in contravention of Blakely v. Washington
(2004), 542 U.S. 296, 124 S.Ct. 2531. Similarly, appellant's third assignment of error claims that the trial court erred in sentencing him to greater than minimum terms contrary to the provisions of R.C. 2929.14(B).
 {¶ 27} Ohio's sentencing statutes have recently been subjected to much scrutiny and modification. In State v.Foster, 109 Ohio St.3d 1, 2006-Ohio-856, the Supreme Court of Ohio followed the lead of the United States Supreme Court, applying Apprendi v. New Jersey (2000), 530 U.S. 466,120 S.Ct. 2348, and Blakely, supra, to Ohio's felony sentencing statutes. In accord with those holdings, and the principle that a defendant's Sixth Amendment right to a trial by jury is violated when judicial factfinding results in a sentence greater than supported by a jury verdict or a defendant's own admissions, the Supreme Court of Ohio found several provisions of Ohio's sentencing scheme to be unconstitutional. As is pertinent here, the Foster court declared R.C. 2929.14(B) unconstitutional and severed it from the remainder of the sentencing statutes. Id. at ¶ 99. The court further provided, pursuant to U.S. v. Booker
(2005), 543 U.S. 220, 125 S.Ct. 738, that its holding applies to all cases on direct review at the time of the decision.
 {¶ 28} Accordingly, we must apply Foster to the instant appeal. However, unlike any of the defendants in Foster,
appellant's sentencing hearing took place on April 22, 2005, well after the United States Supreme Court decided Blakely on June 24, 2004. Thus, appellant had the opportunity to object to any constitutional error in his sentencing, but failed to do so. Constitutional arguments not raised at trial are generally deemed waived. State v. Awan (1986), 22 Ohio St.3d 120, paragraph three of the syllabus. Accordingly, while the law announced inFoster applies to our review, we need not remand this case for a second sentencing hearing. Instead, we apply the "ordinary prudential doctrine" of waiver to find that appellant is not entitled to a new sentencing hearing. See Booker, supra,543 U.S. at 268; State v. Draughon, Franklin App. No. 05AP-860,2006-Ohio-2445, at ¶ 7-8.
 {¶ 29} Appellant did not raise any objections to his sentence, let alone, one based on his constitutionalSixth Amendment rights, in the trial court. Therefore, appellant waived any Blakely argument. State v. Silverman, Franklin App. Nos. 05AP-837, 2006-Ohio-3826; State v. Mosley, Franklin App. No. 05AP-701, 2006-Ohio-3102; Draughon, supra, at ¶ 8. Further, as a result of Foster, "[t]rial courts have full discretion to impose a prison sentence within the statutory range and are no longer required to make findings or give their reasons for imposing maximum, consecutive, or more than the minimum sentences." Id. at paragraph seven of the syllabus. Thus, a trial court is no longer required — or permitted — to make findings under R.C. 2929.14(B) in order to impose a non-minimum sentence.
 {¶ 30} As a final matter, we note that Foster also declared portions of R.C. 2953.08(G) unconstitutional. That statute permitted an appellate court to remand matters for the trial court to make certain statutory findings it failed to make in sentencing matters. Foster, at ¶ 97. Thus, an appellant may not premise error on alleged procedural deficiencies of the trial court's sentencing entry. State v. Knopf, Franklin App. No. 1201, 2006-Ohio-3806, at ¶ 12, citing State v. Summers, Lorain App. No. 05CA008784, 2006-Ohio-2178, at ¶ 4, quoting State v.Dudukovich, Lorain App. No. 05CA008729, 2006-Ohio-1309.
 {¶ 31} Based on the foregoing, appellant's second and third assignments of error are overruled.
 {¶ 32} Having overruled appellant's first, second, and third assignments of error, we affirm the judgments of the Franklin County Court of Common Pleas.
Judgments affirmed.
Klatt, P.J., and Brown, J., concur.