OPINION
{¶ 1} Quarran S. Covington, defendant-appellant, appeals from a judgment of the Franklin County Court of Common Pleas in which the court found him guilty, pursuant to a jury trial, of two counts of murder with specification, in violation of R.C. 2903.02, which are unclassified felonies; two counts of aggravated murder with specifications, in violation of R.C. 2903.01, which are unclassified felonies; and aggravated robbery with specification, in violation of R.C. 2911.01, which is a first-degree felony. After a bench trial, the trial court also found appellant guilty of having a weapon while under disability, in violation of R.C. 2923.13, which is a third-degree felony. *Page 2 
 {¶ 2} On the afternoon of May 16, 2005, John Barnett and Anthony Wright were found fatally shot in the front seat of a parked vehicle in the parking lot of an apartment complex in Columbus, Ohio. Based upon information gathered by police during their investigation, including an eyewitness account, appellant's actions after the murders, and appellant's possible involvement with Barnett and Wright in a drug transaction that was to occur on May 16, 2005, a warrant was issued for appellant. Appellant was eventually arrested and indicted on four counts of aggravated murder with specification, aggravated robbery with specification, having a weapon while under disability, and possession of cocaine. On July 7, 2006, a jury trial was held on all counts, except for the having a weapon while under disability count, which was tried to the court. The state later dismissed the possession of cocaine count. At trial, the state presented 18 witnesses, and appellant presented none in defense. The jury found appellant guilty of the lesser-included offense of murder with specification with regard to two of the aggravated murder counts and guilty on the remaining counts and specifications. On July 10, 2006, the court held a sentencing hearing, after which the trial court sentenced appellant to incarceration of 30 years to life with an additional three years for the use of a firearm as to the aggravated murder counts, ten years with an additional three years for the use of a firearm as to the aggravated robbery count, and five years as to the having a weapon while under disability count. The two murder counts merged with the two aggravated murder counts for purposes of sentencing. The court further ordered the sentences for all of the counts to run consecutive to each other, as well as each of the sentences for the use of a firearm on the aggravated murder counts, with the remaining firearm specifications to merge for purposes of sentencing. Therefore, appellant was sentenced *Page 3 
to a total incarceration term of 81 years to life. The trial court entered judgment on the sentence on July 13, 2006. Appellant appeals the judgment of the trial court, asserting the following assignments of error:
 [I.] THE TRIAL COURT ERRED BY NOT GIVING JURY INSTRUCTIONS APPROPRIATE FOR THE FACTS OF THE CASE, WHICH WERE OFFERED BY DEFENSE COUNSEL IN WRITING, AND THEREFORE DEPRIVED THE APPELLANT OF DUE PROCESS OF LAW AS GUARANTEED BY THE OHIO AND UNITED STATES CONSTITUTION[S.]
 [II] TRIAL COUNSEL PROVIDED INEFFECTIVE ASSISTANCE WHEN THEY FAILED TO PROPOSE A COMPLETE AND COMPREHENSIVE JURY INSTRUCTION, WITH PROPER REFERENCES TO THE LAW, RESULTING IN THE DENIAL OF THE RIGHT TO A FAIR TRIAL AND THE RIGHT TO EFFECTIVE ASSISTANCE OF COUNSEL UNDER THE SIXTH
AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION AS WELL AS ARTICLE ONE, SECTION TEN OF THE OHIO CONSTITUTION[.]
 [III] THE TRIAL COURT ERRED BY NOT SENTENCING APPELLANT TO MINIMUM AND CONCURRENT TERMS OF IMPRISONMENT, THEREFORE DEPRIVING APPELLANT OF DUE PROCESS OF LAW AS GUARANTEED BY THE OHIO AND UNITED STATES CONSTITUTION[S.]
 [IV] THE TRIAL COURT ERRED WHEN IT ENTERED JUDGMENT AGAINST THE DEFENDANT WHEN THE EVIDENCE REGARDING THE COMMISSION OF A THEFT OFFENSE, AND THEREFORE ROBBERY, WAS INSUFFICIENT TO SUSTAIN A CONVICTION AND WAS NOT SUPPORTED BY THE MANIFEST WEIGHT OF THE EVIDENCE[.]
 {¶ 3} Appellant argues in his first assignment of error that the trial court erred when it failed to give jury instructions appropriate for the facts of the case. A determination as to which jury instructions are proper is a matter left to the sound *Page 4 
discretion of the trial court. State v. Guster (1981),66 Ohio St.2d 266, 271. We review the trial court's refusal to give the requested jury instructions under an abuse of discretion standard. State v. Wolons
(1989), 44 Ohio St.3d 64, 68. An abuse of discretion connotes more than merely an error of law or judgment; it implies that the trial court's attitude was unreasonable, arbitrary or unconscionable. State v.LaMar, 95 Ohio St.3d 181, 2002-Ohio-2128, at ¶ 40. Further, Crim.R. 30(A) requires a trial court to fully and completely give the jury all instructions which are relevant and necessary for the jury to weigh the evidence and discharge its duty as the fact finder. State v. Comen
(1990), 50 Ohio St.3d 206, paragraph two of the syllabus. On review, we will not consider a single jury instruction in isolation. State v.Jalowiec (2001), 91 Ohio St.3d 220, 231. Rather, jury instructions are reviewed in their entirety to determine if they contain prejudicial error. State v. Porter (1968), 14 Ohio St.2d 10.
 {¶ 4} In the present case, appellant proposed two jury instructions that the trial court refused to give. With regard to the first proposed instruction, appellant requested that an instruction be given on eyewitness identification, which was used in United States v.Telfaire (1972), 469 F.2d 552. On appeal, appellant fails to give any reasons why the trial court erred or the error was prejudicial, except to indicate that the Telfaire instruction would have "expounded" upon the instructions on identification given by the court. Appellant's proposed instructions are taken verbatim from Telfaire, at 558-559, except for a few negligible alterations, such as substituting appellant's name for "defendant" and "Prosecution" for "Government." TheTelfaire model instruction cautions the jury that eyewitness testimony is potentially unreliable, and that the identity of the defendant as the perpetrator must be proven beyond a reasonable doubt. It further advises that, in *Page 5 
appraising the identification testimony of a witness, the jury should consider the capacity and opportunity of the witness to observe the defendant; the identification being or not being the product of the witness' own recollection, given the strength of the identification and the circumstances under which it was made; the inconsistent identifications that may have been made by the witness; and the general credibility of the witness. Guster, at 268, fn. 1.
 {¶ 5} The decision whether to give a Telfaire instruction is a matter within the sound discretion of the trial court that depends "in large measure on whether a resolution by the jury of the disputed issues in the case requires or will be clearly assisted by the instruction."Guster, at 271. This court has rejected the contention that theTelfaire instruction is required under Ohio law. See State v.Payne, Franklin App. No. 02AP-723, 2003-Ohio-4891, at ¶ 96 (reviewing failure to give a Telfaire instruction under plain error standard). Further, this court has long held that the trial court's instruction on eyewitness identification is proper when it is a modified version of theTelfaire model instruction that incorporates much, or the gist, of theTelfaire admonitions. See State v. Wilkerson, Franklin App. No. 01AP-1127, 2002-Ohio-5416, at ¶ 59-60 (reviewing failure to requestTelfaire instruction under an ineffective assistance of counsel claim); see, also, State v. Clagg (Dec. 1, 1994), Franklin App. No. 94APA03-397 (reviewing failure to request Telfaire instruction under an ineffective assistance of counsel claim); State v. Foster (Dec. 20, 1988), Franklin App. No. 88AP-540; State v. Williams (Nov. 2, 1982), Franklin App. No. 82AP-379. In Wilkerson, we found the instructions on identity sufficient when the trial court instructed the jury that defendant's identity as the perpetrator of the crime must be proven beyond a reasonable doubt; the value of the identification testimony depends *Page 6 
upon the opportunity that the witness had to observe the offender at the time of the offense and to make a reliable identification later; the jury should consider the capacity and opportunity the witness had to observe the offender and to make a reliable observation, taking into account the strength of the witness' identification and the circumstances under which the identification was made; the jury must consider the credibility of the witness and decide whether the witness is truthful; and if, after examining the evidence, the jury had a reasonable doubt as to the accuracy of the identification, it must find the defendant not guilty. Similarly, in Clagg, we found the trial court's jury instructions on identity to be sufficient when they included these same elements.
 {¶ 6} In the present case, the jury instructions given by the trial court on identity includes the identical elements of the instructions given in Wilkerson and Clagg. "When the defendant requests a specific special instruction, the trial court is not required to give that instruction verbatim but instead may give a modified version or form of the instruction so long as the jury has been properly instructed upon the specific [matter] incorporated in the specific request."Williams, supra. Here, we find the modified Telfaire instruction was proper, and appellant can show no prejudice as a result of the trial court's instruction.
 {¶ 7} Appellant also argues that the trial court erred when it refused to give an instruction regarding the testimony of a cooperating witness or informer. Appellant's proposed jury instruction, in this respect, was directed at the testimony of Kevin Grant, who was appellant's county jail cell mate. Grant testified against appellant and admitted the prosecution in the present case agreed to write a letter to the judge in Grant's federal case to get a reduction in his sentence based upon his cooperation in the current case. Appellant's proposed instruction indicated: *Page 7 
 You have heard testimony from Kevin Grant, who testified on behalf of the prosecution. Kevin Grant has been convicted and sentenced in Federal Court of charges unrelated to this case. He testified that in exchange for giving testimony in this case, the prosecution will write a letter to his Federal Judge who may or may not reduce his Federal sentence. His testimony should be viewed with grave suspicion and weighted with great caution.
 {¶ 8} This instruction was a modified version of Ohio Jury Instruction 405.41 regarding the testimony of an accomplice, not an informant. A party is entitled to the inclusion of its requested instruction only if it is a correct statement of the law applicable to the facts of the case. Murphy v. Carrollton Mfg. Co. (1991), 61 Ohio St.3d 585. Jury instructions are proper if they correctly state the law as applied to the facts of the case, and if reasonable minds can properly reach the conclusion sought by the instructions. Id. We find the requested jury instruction was not a correct statement of law. In his appellate brief, appellant claims his proposed instruction closely resembles the model jury instruction on informants found in Ohio State Bar Association Jury Instruction 405.50. However, we find the proposed instruction submitted by appellant based upon the accomplice instruction differs from the model informant instruction in several significant ways. Although both instructions indicate that the jury should consider any benefits the informant is to receive from the prosecution, appellant's instruction urges a greater degree of skepticism than the model instruction for informants directs. Appellant's instruction indicates that "[h]is testimony should be viewed with grave suspicion and weighted with great caution," while the model instruction on informants cited in appellant's brief indicates only that the testimony must be examined with "greater caution" than ordinary witnesses. The difference in connotation between these two instructions is substantial, with appellant's version being appreciably more damning against the *Page 8 
reliability of the witness. Further, appellant's instruction fails to indicate, as do the model informant instructions cited by appellant, that there is nothing improper in the prosecution's use of informers and that, merely because a witness has received benefits or promises from the prosecution, such does not mean the testimony is not worthy of belief. As such, appellant's jury instruction is inadequate. Appellant cannot request a jury instruction that includes inflated admonitions that may be viewed as favorable for the defense while disregarding other instructions that might be viewed as more favorable to the state. Appellant fails to cite any other case in which a court has cited this model jury instruction for accomplice testimony to instruct a jury on an informant's testimony. In addition, the jury was well aware of the circumstances under which Grant claimed to have heard appellant's statements, and there was extensive testimony on such. Finally, appellant has not demonstrated that, had such instruction been given, he would have been acquitted. Therefore, we find appellant's proposed jury instruction was not a proper statement of law as articulated, and the trial court did not err in failing to give the requested instruction. For these reasons, appellant's first assignment of error is overruled.
 {¶ 9} Appellant argues in his second assignment of error that trial counsel provided ineffective assistance of counsel by failing to propose a complete and comprehensive jury instruction on the issue of informant testimony. Appellant maintains that his trial counsel should have given the explicitly applicable instruction in the Ohio State Bar Association Jury Instruction 405.50 regarding informant testimony rather than modify the Ohio Jury Instruction 405.41 regarding accomplice liability. The standard for determining whether a trial attorney was ineffective requires appellant to show: (1) that the trial attorney made errors so egregious that the trial attorney was not functioning as *Page 9 
the "counsel" guaranteed appellant under the Sixth Amendment; and (2) that the deficient performance prejudiced appellant's defense.Strickland v. Washington (1984), 466 U.S. 668, 686-687, 104 S.Ct. 2052. Essentially, appellant must show that the proceedings, due to his attorney's ineffectiveness, were so unfair that there is a reasonable probability that the result would have been different absent his attorney's deficient performance. Id., at 693. Furthermore, a court must be "highly deferential" and "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance" in reviewing a claim of ineffective assistance of counsel. Id., at 689. In Ohio, a properly licensed attorney is presumed to execute his or her duties in an ethical and competent manner. State v.Hamblin (1988), 37 Ohio St.3d 153, 155-156. Debatable strategic and tactical decisions may not form the basis of a claim for ineffective assistance of counsel. State v. Phillips (1995), 74 Ohio St.3d 72, 85. Reviewing courts must not use hindsight to second guess trial strategy, and must bear in mind that different trial counsel will often defend the same case in different manners. Strickland, at 689; State v. Keenan
(1998), 81 Ohio St.3d 133, 152.
 {¶ 10} Upon review of the record below, we cannot say that appellant's trial counsel was ineffective. As we found in our discussion of appellant's first assignment of error, the jury was aware of the circumstances under which Grant claimed to have heard appellant's statements, and Grant was directly examined and cross-examined on such. The jury heard the benefits Grant would receive in exchange for his testimony, and they were able to judge his credibility. The jury instructions clearly instructed the jury that they should consider the interest or bias of the witnesses, as well as the facts and circumstances surrounding the testimony. In addition, appellant has not demonstrated *Page 10 
that, had such instruction been given, there was a reasonable probability that the result would have been different. As indicated infra in our treatment of appellant's fourth assignment of error, there was sufficient evidence to find him guilty of the crimes, and his convictions were not against the manifest weight of the evidence. For these reasons, appellant's second assignment of error is overruled.
 {¶ 11} Appellant argues in his third assignment of error that the trial court erred in sentencing him to a more than minimum sentence and consecutive sentences in violation of his right against ex post facto laws, due process rights, right to a trial by jury, and the rule of lenity. Essentially, appellant asserts in all of these arguments that the retroactive application of State v. Foster, 109 Ohio St.3d 1,2006-Ohio-856, to his sentence is unconstitutional. In Foster, the Ohio Supreme Court held that, under the United States Supreme Court's decisions in Apprendi v. New Jersey (2000), 530 U.S. 466,120 S.Ct. 2348, and Blakely v. Washington (2004), 542 U.S. 296, 124 S.Ct. 2531, portions of Ohio's sentencing scheme were unconstitutional because they required judicial fact finding before a defendant could be sentenced to more than the minimum sentence, the maximum sentence, and/or consecutive sentences. Foster, at paragraph one of the syllabus. As a remedy, the Ohio Supreme Court severed the offending sections from Ohio's sentencing code. Thus, pursuant to Foster, trial courts had full discretion to impose a prison sentence within the statutory range and were no longer required to make findings or give their reasons for imposing maximum, consecutive, or more than minimum sentences. Id., at ¶ 100.
 {¶ 12} Appellant argues that the severance remedy instituted inFoster violates his constitutional rights because the severance, in effect, raises the presumptive minimum *Page 11 
sentence. Appellant maintains that, pursuant to the sentencing statutes in effect at the time his crimes were committed, there was a presumption of minimum and concurrent terms and non-maximum sentences. However, appellant failed to raise Foster in the court below. By failing to raise an objection to the trial court, defense counsel failed to preserve this claim of error for appellate review. See, e.g., State v. Trewartha, Franklin App. No. 05AP-513, 2006-Ohio-5040, at ¶ 28 (constitutional arguments not raised at trial are generally deemed waived), citingState v. Awan (1986), 22 Ohio St.3d 120.
 {¶ 13} Notwithstanding waiver, this court addressed these issues inState v. Gibson, Franklin App. No. 06AP-509, 2006-Ohio-6899. InGibson, this court found the retroactive application of Foster did not violate the right to due process and the ex post facto clause. We determined that we were bound to apply Foster as it was written.Gibson, at ¶ 15, citing State v. Alexander, Franklin App. No. 06AP-501,2006-Ohio-6375. We explained that it is unlikely the Ohio Supreme Court would direct inferior courts to violate the constitution, and in any event, inferior courts are bound by Ohio Supreme Court directives. Id., citing State v. Grimes, Washington App. No. 06CA17, 2006-Ohio-6360;State v. Hildreth, Lorain App. No. 06CA008879, 2006-Ohio-5058; andState v. Durbin, Greene App. No. 2005-CA-134, 2006-Ohio-5125. We further reasoned in Gibson that, because the criminal defendants were aware of the potential sentences at the time they committed their crimes, and because the remedial holding of Foster was not unexpected,Foster did not violate due process notions. Id., at ¶ 16, citingState v. McGhee, Shelby App. No. 17-06-05, 2006-Ohio-5162. We also noted that the Fifth District Court of Appeals in State v. Paynter, Muskingum App. No. CT2006-0034, 2006-Ohio-5542, observed that several federal circuit courts have addressed these issues in *Page 12 
relation to the United States Supreme Court's decision in United Statesv. Booker (2005), 543 U.S. 220, 125 S.Ct. 738, and rejected similar arguments regarding ex post facto and due process violations. Id., citing Paynter, at ¶ 42.
 {¶ 14} In the present case, like the defendant in Gibson, appellant knew the statutory range of punishments at the time he committed the offenses for which he was convicted. The statutory range of punishments has not changed in light of Foster. Thus, Foster did not judicially increase appellant's sentence, and it did not retroactively apply a new statutory term to an earlier committed crime. Further, "`at the time that appellant committed his crimes the law did not afford him an irrebuttable presumption of minimum and concurrent sentences.'"Gibson, at ¶ 18, citing Alexander, at ¶ 8. In addition, to the extent that appellant claims the trial court's sentence, as well as the remedy in Foster, violate his Sixth Amendment right to a trial by jury and the principles set forth in Apprendi, Blakely, and Booker, we find this argument unpersuasive. The trial court did not sentence appellant based upon any additional factual findings not found by a jury, and appellant did not receive greater than the statutory maximum based upon factual findings the jury did make, as prohibited by Blakely. Therefore, we conclude that the remedial holding of Foster does not violate appellant's constitutional rights. For these reasons, and based upon our rationale in Gibson, these arguments are without merit.
 {¶ 15} With regard to appellant's argument that the trial court's sentence violated the rule of lenity, we disagree. The rule of lenity is a principle of statutory construction that provides that a court will not interpret a criminal statute so as to increase the penalty it imposes on a defendant where the intended scope of the statute is ambiguous. Moskal v. United States (1990), 498 U.S. 103, 107-108,111 S.Ct. 461. Under the rule, ambiguity in *Page 13 
criminal statutes is construed strictly so as to apply only to conduct that is clearly prescribed. United States v. Lanier (1997),520 U.S. 259, 266, 117 S.Ct. 1219. The rule of lenity has been codified in R.C.2901.04(A), which provides, in pertinent part: "Except as otherwise provided in division (C) or (D) of this section, sections of the Revised Code defining offenses or penalties shall be strictly construed against the state, and liberally construed in favor of the accused."
 {¶ 16} Here, appellant claims that the remedy crafted inFoster, by which the judicially reconstructed statutory provisions are to be retroactively applied to pre-Foster offenses, violates the rule of lenity by imposing the least lenient construction of the sentencing statute on a defendant being sentenced. However, the rule of lenity applies only where there is an ambiguity in a statute or conflict between multiple statutes. See Lanier, at 266. There exists no ambiguity in the sentencing statutes in Ohio because the Ohio Supreme Court held that portions of Ohio's felony sentencing framework were unconstitutional in Foster. See State v. Moore, Allen App. No. 1-06-51,2006-Ohio-6860, at ¶ 12. See, also, State v. Elswick, Lake App. No. 2006-L-075, 2006-Ohio-7011, at ¶ 43 (because R.C. 2929.14[B] is not ambiguous, the rule of lenity does not apply); State v. Green, Ashtabula App. No. 2005-A-0069, 2006-Ohio-6695, at ¶ 24 (the principle of lenity applies to the construction of ambiguous statutes, not to determinations of a statute's constitutionality or to the law regarding the retroactive effect of Ohio Supreme Court decisions). Therefore, the rule of lenity is not applicable to the circumstances in the present case, as appellant points out no ambiguity in the sentencing statutes, and Foster clearly and unambiguously severed the unconstitutional portions of the pertinent sentencing statutes. See Moore, supra (the rule of lenity has no bearing since Foster *Page 14 
clearly and unambiguously severed the unconstitutional portions of these sentencing statutes). See, also, State v. Corbin, Allen App. No. 1-06-23, 2006-Ohio-6092, at ¶ 13 (the rule of lenity is not applicable because Foster can be easily understood to state that portions of the sentencing framework are unconstitutional and provides no ambiguity as to the unconstitutionality of certain statutes). Thus, appellant's arguments are without merit.
 {¶ 17} However, although not raised in his brief, at the oral argument for this appeal, appellant argued, and the state conceded, that the trial court erred in sentencing appellant when it failed to merge the gun specifications related to the aggravated murder counts, for purposes of sentencing. After merging the murder counts with the aggravated murder counts, the trial court sentenced appellant to the following: 30 years to life with an additional three years for the use of a firearm as to each of the two aggravated murder counts; 10 years with an additional three years for the use of a firearm as to the aggravated robbery count; and five years as to the having a weapon while under disability count. The court then ordered the sentences for the aggravated murder, aggravated robbery, and having a weapon while under disability counts to run consecutive to each other, and also the sentences for the use of firearms related to the aggravated murder counts to run consecutive, with the remaining firearm specifications to merge for purposes of sentencing. Thus, the total sentence ordered was 81 years to life.
 {¶ 18} R.C. 2929.14(D)(1)(a)(ii) imposes a mandatory three-year prison term when a defendant is convicted of a firearm specification pursuant to R.C. 2941.145. However, a court is not authorized to impose more than one sentence for multiple firearm specifications if the specifications refer to the same criminal act or transaction. R.C. *Page 15 2929.14(D)(1)(b). As previously indicated, both the state and appellant agree that the trial court erred in imposing consecutive firearm specification sentences in this case because there was only a single act or transaction. Accordingly, appellant's sentence is vacated and the case is remanded for resentencing on this issue. For these reasons, appellant's third assignment of error is overruled in part and sustained in part.
 {¶ 19} Appellant argues in his fourth assignment of error that the judgment was against the manifest weight of the evidence and based on insufficient evidence. When reviewing the sufficiency of the evidence, an appellate court examines the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. State v. Jenks (1991),61 Ohio St.3d 259, paragraph two of the syllabus. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. Id., citingJackson v. Virginia (1979), 443 U.S. 307, 99 S.Ct. 2781.
 {¶ 20} Our function when reviewing the weight of the evidence is to determine whether the greater amount of credible evidence supports the verdict. State v. Thompkins (1997), 78 Ohio St.3d 380, 387. In order to undertake this review, we must sit as a "thirteenth juror" and review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of the witnesses, and determine whether the trier of fact clearly lost its way and created a manifest miscarriage of justice. Id., citing State v. Martin (1983), 20 Ohio App.3d 172, 175. If we find that the fact finder clearly lost its way, we must reverse the conviction and order a new trial. Id. On the other hand, we will not reverse a conviction so long as the state presented substantial evidence for a reasonable *Page 16 
trier of fact to conclude that all of the essential elements of the offense were established beyond a reasonable doubt. State v. Getsy
(1998), 84 Ohio St.3d 180, 193-194; State v. Eley (1978),56 Ohio St.2d 169, syllabus. In conducting our review, we are guided by the presumption that the jury "is best able to view the witnesses and observe their demeanor, gestures and voice inflections, and use these observations in weighing the credibility of the proffered testimony."Seasons Coal Co. v. Cleveland (1984), 10 Ohio St.3d 77, 80.
 {¶ 21} Here, appellant contends that the evidence was insufficient, and his convictions were against the manifest weight of the evidence, only as to his convictions for two counts of aggravated murder and one count of aggravated robbery. With regard to aggravated murder, R.C.2903.01(B) provides, in pertinent part:
 No person shall purposely cause the death of another * * * while committing or attempting to commit, or while fleeing immediately after committing or attempting to commit * * * aggravated robbery * * *
 {¶ 22} With regard to aggravated robbery, R.C. 2911.01 provides, in pertinent part:
 (A) No person, in attempting or committing a theft offense, as defined in section 2913.01 of the Revised Code, or in fleeing immediately after the attempt or offense, shall do any of the following:
 (1) Have a deadly weapon on or about the offender's person or under the offender's control and either display the weapon, brandish it, indicate that the offender possesses it, or use it;
 * * *
 (3) Inflict, or attempt to inflict, serious physical harm on another.
 {¶ 23} "Theft" is defined in R.C. 2913.01(K)(1), and includes, among various other offenses, robbery offenses and theft offenses. R.C.2913.02 delineates the crime of theft and provides, in pertinent part: *Page 17 
 (A) No person, with purpose to deprive the owner of property or services, shall knowingly obtain or exert control over either the property or services in any of the following ways:
 (1) Without the consent of the owner or person authorized to give consent;
 * * *
 (4) By threat;
 (5) By intimidation.
 {¶ 24} Appellant's argument under this assignment of error is based on the contention that there was insufficient evidence to demonstrate, and it was against the manifest weight of the evidence to find, he committed theft, and, therefore, he could not be convicted of aggravated murder or aggravated robbery. Appellant maintains that no one identified him from the scene; no one testified as to what, if anything, the alleged assailant was carrying in the bag he had while leaving the scene; no one knows what the victims had with them in the car; and there was no evidence to link him to these crimes to indicate he possessed property belonging to either victim.
 {¶ 25} After a review of the record, we find appellant's convictions were neither against the manifest weight of the evidence nor based upon insufficient evidence. There was sufficient evidence that appellant committed theft by obtaining the property of the murder victims without their consent, and such a finding was not against the manifest weight of the evidence. Despite appellant's contentions that there was no evidence to link him to these crimes and no one identified him from the scene, Marilyn Seamans, a Columbus Police Department detective, testified that Vontisha Hillman, who lived near the scene of the crime, picked appellant from a photo array. Hillman stated that, although she did not see the suspect's face, it looked like the shape of his head and the slope of his *Page 18 
shoulders as he ran from the trunk of the victims' car. Hillman stated the man was wearing black pants and a black jacket, which had stitching, such as diamonds, triangles or quilting. Miya Shinn, appellant's live-in girlfriend at the time of the murders, testified that appellant owned a black quilted coat. Hillman also stated the man was six foot two inches to six foot three inches, 220-230 pounds and top heavy, which would generally fit appellant's description. Shinn described appellant as "muscular" and "broad shouldered." Hillman also stated the man's hair was puffy, as if braids that had been just taken out. Hillman's description would be consistent with appellant's hairstyle. Keenan Robinson, a friend of Barnett's and Wright's, testified that appellant was not wearing his hair in braids, but out like a little afro. Shinn also testified that, on the day of the murders, appellant had his hair in a small afro, but then shaved his head bald six days after the murders. Thus, there was evidence to prove beyond a reasonable doubt that appellant was the man seen running from the victims' car.
 {¶ 26} As to whether appellant committed a theft, Hillman testified the man running from the trunk of the victims' vehicle had a yellow bag in his hand, and the manner in which the man was holding the bag suggested the bag contained something. Carl Booth, a Columbus Police Department officer, testified the trunk and the right rear door of the victims' car were open, which the jury could have reasonably interpreted to demonstrate appellant had taken money and/or drugs from inside the vehicle or trunk. Kimberly Sharrock, a latent print examiner for the Columbus Police Department, testified that appellant's fingerprint was found on the trunk of the car, and Sharrock opined that it was made when appellant lifted the lid of the trunk. There was also substantial evidence that the victims were in Ohio to sell a large quantity of drugs and had the drugs in their *Page 19 
possession. Kelvin Cannady, a friend of Wright's, testified that Wright showed him a grocery bag of cocaine and told him he was going to Ohio to sell it. Robinson testified that Wright, Barnett, and appellant stated they were going to meet up the next day for some sort of business, which he assumed to be a drug deal because Barnett had told him that he and Wright were involved in the drug trade. Kevin Griffin and Kevin Grant, convicted drug felons who met appellant in the county jail after the murders, testified that, while in jail with appellant, appellant stated that the reason the two men died was because of "the game," meaning drug dealing, and appellant stated the murders were a "come up," meaning a robbery. Grant "figured" appellant was talking about his involvement in the incident when he explained the "come up," and appellant told him the "come up" was for "bricks," meaning cocaine. Thus, there was substantial evidence for the jury to believe that appellant committed a theft by taking money or drugs after killing the victims.
 {¶ 27} Further, there was evidence that appellant suddenly possessed a large amount of money after the murders, which the jury could have construed to prove beyond a reasonable doubt that appellant stole money or drugs from the victims. Shinn testified that, a few days after the murder, she and appellant went to a car dealership, where appellant bought a Dodge Durango, despite the fact that appellant was not employed and had no source of income. Philip Walden, a detective with the Columbus Police Department, testified that documents found in the Dodge Durango showed appellant paid $5,500 in cash for the vehicle, and appellant wired $600 to his mother after the murders. Kira Douglass, appellant's friend and ex-girlfriend, testified that appellant came to her house to stay for a few days after the murders, and then a few days after appellant turned himself in to police, appellant's mother came to her house to retrieve several thousand *Page 20 
dollars that appellant "may" have left there. Antoinette L. Brooks, the mother of appellant's son, testified that, after the murders, appellant appeared at her house and bought her son an expensive pair of tennis shoes. Detective Seamans also testified that she believed appellant had money stolen from the victims. In addition, based upon a recording of appellant's phone calls from jail, Seamans executed a search of Douglass' residence in an attempt to find $9,000 that she believed to be there, although no money was found.
 {¶ 28} There was also evidence presented at trial that appellant was acting suspiciously in the days following the murders. Shinn testified that she last saw appellant, Barnett, and Wright at her home around noon the day of the murders. She left, and when she returned in the evening, appellant called her and told her he was not going to come home that night, he was okay, he loved her, and she should not worry. She wondered why he was not going to come home, because he regularly stayed there. When she did not hear from appellant the next day and night, she was concerned. Two days after the murders, appellant called her and told her to meet him at a friend's house. When she saw him next, she asked him about the murders, and he stated "the less you know, the better." Further, Brooks, the mother of appellant's son, testified that appellant did not visit his son regularly, but then showed up at her home after the murders and bought his son expensive shoes. In addition, as mentioned above, appellant shaved his head six days after the murders, which was not his usual hairstyle.
 {¶ 29} Based upon this evidence, we find the evidence and testimony, if believed, presented sufficient evidence beyond a reasonable doubt to prove appellant committed a theft, and, consequently, both aggravated murder and aggravated robbery. Further, viewing all the reasonable inferences that arise from the evidence and having no reason *Page 21 
to disturb the weight given to this evidence by the jury, we cannot find the jury clearly lost its way and created a manifest miscarriage of justice. Additionally, appellant has given this court no reason to mistrust the jury's determination of credibility of the testimony of the witnesses. Thus, the jury's verdict finding appellant guilty of aggravated murder and aggravated robbery was not against the manifest weight of the evidence. Although appellant has not specifically raised any argument as to the remaining convictions, we have reviewed the record regarding those and conclude there was sufficient evidence to find appellant guilty, and those convictions were not against the manifest weight of the evidence. For these reasons, appellant's fourth assignment of error is overruled.
 {¶ 30} Accordingly, appellant's first, second, and fourth assignments of error are overruled and appellant's third assignment of error is sustained in part and overruled in part. The judgment of the Franklin County Court of Common Pleas is affirmed in part, and reversed, insofar as the sentencing is concerned, and this matter is remanded to that court for resentencing pursuant to the above opinion.
Judgment affirmed in part and reversed in part, cause remanded.
 SADLER, P.J., and PETREE, J., concur. *Page 1